| | | |
|---|---|---|
| In Re:<br>    FRANK FRANZO<br>    LINDA SUSAN FRANKO<br>        Debtor(s) | : <br> : <br> : <br> : | Chapter 13 <br><br> Bankruptcy No. 20-03239 RNO |
| ENID MORA<br>        Movant<br><br>Vs.<br><br>FRANK FRANZO<br>LINDA SUSAN FRANKO<br>        Respondents<br><br>and<br><br>CHARLES J. DEHART, III<br>        Trustee | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | |

## DEBTORS'/RESPONDENTS' BRIEF IN OPPOSITION TO AMENDED MOTION FOR RELIEF FILED BY THE MOVANT, ENID MORA

### Brief History

    This matter comes before this Honorable Court due to Movant's Amended Motion for Relief. Movant is the former spouse of the Debtor, Frank Franzo. The parties were divorced on November 3, 2011.

    During their divorce process, the parties agreed to participate in a "divorce mediation" whereby neither party had legal representation but rather a "mediator" would work out a mutually, acceptable settlement and author a final draft of the parties' agreement.

    During the negotiations of said agreement, the parties discussed the terms of their equitable distribution of property. Movant/Wife wanted to be able to keep the marital residence until the Movant's son, (son from a previous relationship), graduated from college or dropped out, at which time the Movant/Wife would be free to sell the home and keep the proceeds. Said time period was thought to be no longer than four to five years. Debtor/Husband agreed to this provision with the understanding that the Debtor/Husband agreed to continue making the mortgage payments until said stepson graduated from college, or dropped out.

Of particular interest is the provision within the Marital Dissolution Agreement, (¶ 12), which provided for the equitable distribution of the marital residence, the marital debt on the residence, and dividing the parties' equitable interest in the property upon the sale of same.

### Issues Presented

1. Whether Movant is entitled to relief from the automatic stay?

Answered in the negative.

### Argument

Pursuant to *11 U.S.C. § 362(a)*, the filing of a Petition for Relief in Bankruptcy Court automatically triggers a stay of various actions against the Debtor and/or property of the estate (*as broadly defined under 11 U.S.C. § 541*).

In order to legally circumvent the automatic stay, permission or relief must be granted by the Bankruptcy Court.

The automatic stay of *§ 362(a)* prohibits, inter alia, the commencement or continuation of judicial or administrative proceedings against the Debtor, the enforcement of judgments or administrative proceedings against the Debtor, the enforcement of judgments against the Debtor or property of the estate, acts to obtain possession of or exercise control over property of the estate, acts to create, perfect or enforce liens against the property of the estate and any setoff of debt owed to the Debtor against any claims against the debtor.

Upon the filing of a bankruptcy, any interest in any property, whether personal property or real property, becomes the property of the estate. Any effort to exercise control over the property of the estate without Court approval is a violation of the automatic stay, unless it falseunder one of the exceptions delineated under *11 U.S.C. § 362*.

The automatic stay of *11 U.S.C. § 362* is a fundamental feature of bankruptcy proceedings. It serves to give the Debtor breathing room by stopping collection efforts and creditor harassment so as to allow the Debtor to either recognize or otherwise discharge debt in order to achieve a fresh start.

*11 U.S.C. § 362(b)(2))(A)* provides a number of exceptions to the automatic stay which would allow the commencement or continuation of family court actions. They are:

(1) To establish paternity [*§ 362(b)(2)(A)(i)*];

(2) To establish or modify an order for domestic support obligations [*§§ 362(b)(2)(A)(ii)*];

(3) Issues concerning child custody or visitation [*§ 362(b)(2)(A)(iii)*];

(4) For the dissolution of a marriage <u>except to the extent that such action involves a division of property of the estate</u> [*§ 362(b)(2)(A)(iv)*] [emphasis added];

(5) Regarding domestic violation [*§ 352(b)(2)(A)(v)*].

Movant has not shown cause for any of the aforementioned exceptions to kick in.

Specifically, (1) paternity is not an issue. There is only one child involved and it is undisputed that the Debtor is not the father; (2) Movant is not seeking to modify or establish a support order, but rather enforce an existing order; (3) there are no custody or visitation rights at issue; (4) the marriage in question in question has already been dissolved; and, (5) there are no legal allegations of domestic violence.

Movant asserts that she is entitled to payment from Debtor as the debt in question is a nondischargeable, support obligation pursuant to *§ 523(a)(5) and § 523(a)(15)* – (Amended Motion for Relief ¶ 5).

First of all, Debtor asserts that *§ 523(a)(15)* is inapplicable to the issue at bar. It is important to note that this case is a Chapter 13 case and not a Chapter 7.

> *§ 523(a)(15)* excepts from discharge debts owed to a spouse, former spouse or child of the debtor (that is not in the nature of alimony, maintenance or support) incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.
>
> If a Family Law debt is not a domestic support obligation, i.e., not in the nature of alimony, support or maintenance, it may nonetheless be dischargeable pursuant to *11 U.S.C. § 523(a)(15)*.

Again, the specific matter before the Court at this time is whether Movant is entitled to relief from the automatic stay, <u>not</u> whether the debt is dischargeable.

> *11 U.S.C. § 1328(a)(2)* lists various *§ 523(a)* debts excepted from a Chapter 13 discharge. *§ (a)(15)* is conspicuously absent from said list. Thus, *(a)(15)* debts can be discharged in a Chapter 13 case, (provided that the Chapter 13 Plan is filed in good faith and meets all other applicable Chapter 13 requirements).

However, since Movant has raised the issue in her Amended Motion for Relief, we will briefly address it in anticipation of a future objection to discharge.

The main issue centers around whether the debt in question is a "Domestic Support Obligation, ("DSO")." It is uncontested by the Debtor that if the debt were a DSO it would not be dischargeable. Focus then must be on how the debt was established in the first place.

3

The parties negotiated their divorce through the use of a single attorney who rendered legal advice to both parties. This questionable practice created an obvious conflict of interest which severely compromised Debtor's interest. A tacit review of the agreement and addendums reveal that:

1. Wife gets house valued at $425,000.00, Husband pays mortgage payments in excess of $200,000.00

2. Wife get Jaguar;

3. Wife gets all furnishings;

4. Wife gets all appliances;

5. Wife gets all tax exemptions;

6. Each party gets to keep all retirement benefits, (Husband had none);

7. Wife gets Husband's $500,000 life insurance policy. (Husband has to pay premiums and can't cancel);

8. Wife gets to keep Husband's $5,000 life insurance policy. (Husband has to pay premiums and can't cancel);

9. Wife gets Husband's inherited furnishings from his Grandmother.

On the other hand,

1. Husband got his clothes;

2. Husband got his Ford;

3. Husband gets his dog;

The unconscionable disparity of this agreement aside, Debtor's main defensive provision wasn't even clearly delineated in the agreement. When he questioned "the attorney," he was assured that the language was sufficient to protect him.

Specifically, as stated previously, Debtor had only agreed to pay the mortgage payments until the Movant's 17-year old son finished college or dropped out. During which time Debtor and Movant would continue to reside separately in the marital residence.

It should be recognized that the "child" in question was Movant's then 17-year old son whom Debtor had no legal duty to support.

In reviewing the original agreement, the provision of the mortgage payments were contained in ¶ 12, which states:

> Wife assumes sole and full responsibility for all aspects of said realty, financial and otherwise, and she shall hold Husband completely harmless therefrom. Notwithstanding the foregoing, Husband agrees to make all mortgage payments and to pay all real estate taxes on said realty for as long as Wife resides therein and, notwithstanding that, Husband shall claim no share of the equity in said realty should it ever be sold.

The previous five paragraphs of the agreement involved issues of equitable distribution.

Paragraph 6 of the parties' agreement acknowledged previous distribution of personal property except as otherwise provided in the agreement.

Paragraph 7 of the parties' agreement allowed the parties to seek tax advice regarding any tax consequences of the agreement.

Paragraph 8 of the parties' agreement addressed the division of retirement benefits.

Paragraph 9 of the parties' agreement divided up the parties' vehicles.

Paragraph 10 of the parties' agreement gave all of the furnishings and appliances to the Movant/Wife.

Paragraph 11 of the parties' agreement gave the Movant/Wife the marital residence and provided for the execution of documents pursuant to the parties' equitable distribution agreement.

The agreement also agreed that the Debtor/Husband would not be entitled to claim the Movant/Wife's son as a dependent.

Paragraph 12 likewise is an equitable distribution provision which awards the marital residence to the Movant/Wife and requires the Debtor to be responsible for the marital debt in the form of the mortgage payments and further decrees that Debtor is not entitled to any "equity" in the property being distributed. No where in this provision or in the agreement at all is there a mention of the words "support: or "maintenance" or "alimony" pertaining to Debtor's obligation.

They are not there because this was never intended to be a DSO.

Movant is seeking relief in order to get the matter to state court to enforce the collection of a disputed debt which inevitably will force the Debtor to pay the disputed debt from the estate assets or go to jail. This is precisely why the automatic stay exists.

In the case of In Re Gianakas, *917 F.2d 759 (3rd Cir. 1990)*, the court examined a situation very similar to the case at bar. The Gianakas case involved the continued payment of mortgage payments on a marital residence and the marital dissolution agreement did not specifically state

5

that the obligation was for support. As such, the court set out an outline to help determine whether such a payment was for equitable distribution or support.

First of all, the court pointed out that the burden of proof was on the party objecting to the discharge to show nondischargeability.

A party, such as appellee here, who objects to the discharge of a particular debt has the burden of proving nondischargeability. *Bankruptcy Rule 4005*; <u>Matter of Long</u>, *794 F.2d 928, 930 (4th Cir. 9186)*; <u>In re Kleppinger</u>, *27 B.R. 30, 531 (Bankr. M.D.Pa. 1982)*.

(It is noted that the <u>Gianakas</u> trial court erroneously stated that the debtor bore the burden of proof).

Thus, under Section 523(a)(5) a creditor spouse must prove that the obligation sought to be found non-dischargeable is related to or stems from the dissolution of the marriage and that it is truly intended to be "alimony, maintenance or support" as those terms are defined by law. <u>Id.</u>

The court then opined that when the agreement does not specifically state whether or not the debt is for support that the inquiry turns beyond the four corners of the document and focuses on the intent of the parties.

The fact that the provision in question is the very same provision which awarded the wife the marital residence required the debtor to pay a marital debt and specifically stated that the debt would not be entitled to any equitable distribution of the asset or its proceeds is a strong indicator that the parties intended this provision to be equitable distribution.

In addition, it is clear from the language of the agreement that the parties anticipated the Movant/Wife vacating and/or selling the premises at some point.

This intention confirms Debtor's assertion that this provision was only intended to be temporary while Debtor continued to live separately in the marital residence and the Movant/Wife's son went to college.

It is noteworthy that when the Debtor sought reimbursement of over $20,000.00 for mortgage overpayments made to the Movant/Wife when she concealed the reduction of the mortgage payments, the court ordered a $20,000.00 judgment in favor of the Debtor but specified that it could only be used as a lien against the property <u>when</u> it was sold. Thus, indicating that the debt was not for support but rather a payment towards a marital debt.

Furthermore, at no time until the filing of her Brief at bar did Movant/Wife disclose that her son was no longer a dependent. Debtor learned through third parties that her son dropped out of collage several years ago.

Another factor to consider the intention of the parties is the Debtor's living arrangement at the time of the agreement. It was intended by the parties that the Debtor could continue living in the marital residence and, in fact, continued to do so for a few years after the divorce. His continuing to make mortgage payments was intended to pay for a roof over his head, not her's.

The circumstances surrounding the agreement have been addressed. The financial circumstances are also worth noting. Debtor held a middle, management position with a medical supply company and Movant was a registered nurse. The terms of the agreement virtually gave <u>everything</u> to the Movant and left Debtor with the clothes on his back, his beat up Ford automobile and his dog.

Probably the most perplexing thing about the financial circumstances surrounding this claim is the fact that the mortgage on Movant's house is not even the same mortgage as Debtor agreed to pay. It has been refinanced at least one time.

Finally, the issue arises as to what was the "function" served by the obligation. A clear reading of the agreement and review of all the circumstances show that its purpose was to divide all the assets, payoff all marital debt, and allow a brief period of time where they could both remain in the marital residence before selling it. There is no indication whatsoever that its function was to create perpetual support obligation.

WHEREFORE, Debtors respectfully requests this Honorable Court to deny the Movant's Amended Motion for Relief in its entirety.

Dated: 02/03/2021

Respectfully submitted,

MATTES & MATTES, P.C.

By: _____
Roger Mattes, Jr., Esquire
Attorney for the Debtors,
Frank Franzo and Linda Susan Franzo
324 North Washington Avenue
Scranton, PA 18503-1578
(570) 969-2222
Attorney ID No. 64691